IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEPHEN A. M.,[1]        )
                         )
      Plaintiff,         )
                         )
vs.                      )  Civil No. 19-cv-704-DGW[2]
                         )
COMMISSIONER OF SOCIAL   )
SECURITY,                )
                         )
      Defendant.         )

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in February 2016, alleging disability beginning on June 24, 2015. After holding an evidentiary hearing, an ALJ denied the application on October 18, 2018. (Tr. 15-30). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 13.

1

this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ erred in failing to re-contact the consultative examiner, Dr. Feinerman, to obtain additional information rather than discounting his opinions because his reports lacked a function-by-function analysis.

2. The RFC assessment is not supported by substantial evidence and is the product of reversible errors of law because the agency decision mirrors Dr. Pardo's opinion with respect to the knees while discounting his opinion as unsupported, but assigns greatest weight to Dr. Kenney whose opinion is essentially indistinguishable from Dr. Pardo's discounted assessment of the knees.

3. The final agency decision is not supported by substantial evidence and is the product of reversible errors of law because the RFC assessment fails to account for moderate limitations in maintaining concentration, persistence, and pace.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is

taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. He was insured for DIB only through December 31, 2015. The ALJ found that plaintiff had severe impairments of seizure disorder, migraine headaches, lumbar degenerative joint disease, mild cervical spine degenerative disc disease, mood disorder, anxiety disorder, and schizophrenia.[4]

The ALJ found that plaintiff had the residual functional capacity (RFC) to do light work, with physical and mental limitations. He was able to sit for six hours in an eight-hour workday; stand and walk for two hours in an eight-hour workday; occasionally push and pull with both lower extremities; occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; occasionally kneel, crouch, and crawl; and frequently stoop. He should avoid concentrated exposure to extreme cold, noise, or vibration; and avoid working at unprotected heights or around dangerous moving machinery and operating a motor vehicle. Mentally, he

---

[4] The ALJ did not list plaintiff's knee problems among his severe impairments, but he obviously accepted that plaintiff has knee pain and accounted for it in his RFC assessment.

4

was limited to "the basic demands of unskilled work," meaning that he could "understand, remember, and carry out simple instructions." He was also limited to occasional interaction with supervisors and co-workers and no interaction with the public, and his job duties should primarily involve working with things rather than with people.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do his past relevant work as a production supervisor or a department/assistant manager. However, he was not disabled because he was able to do other jobs that exist in significant numbers in the national economy.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's arguments, a detailed discussion of the medical records is not required.

### 1. Agency Forms

Plaintiff was born in 1970 and was almost 48 years old on the date of the ALJ's decision. (Tr. 335). He alleged disability due to an uncontrolled seizure disorder, migraine headaches, COPD, PTSD, anxiety, degenerative disc disease, spinal stenosis, and arthritis in his hips and knees. He was 6' 1" tall and weighed 190 pounds. (Tr. 339).

A prior claim for disability was denied on June 23, 2015. (Tr. 335, 129-151). The current alleged onset date is the day after the prior denial.

In March 2016, plaintiff said he could not work because he was in constant pain and had trouble walking. His driver's license had been suspended because he

had seizures. Sometimes he had anxiety attacks just leaving the house. He reported that he had trouble concentrating and had short-term memory loss. He did no chores around the house. He did not do well with stress or changes. (Tr. 353-360).

In late 2017, plaintiff began taking medications prescribed by Dr. Paul Carter for agitation, schizophrenia, depression, and anxiety. These medications include Haloperidol, Venlafaxine (Effexor), and Zyprexa. (Tr. 415).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in May 2018. (Tr. 74).

Plaintiff testified that he lost his insurance in 2016, but he had insurance at the time of the hearing and was able to get his medications. He took seizure medication but still had about one to three seizures a month. (Tr. 87). He took hydrocodone for pain in his neck, back, and knees. He had surgery on both knees to "trim out" arthritis. He wore knee braces and used a cane. (Tr. 90-91).

Plaintiff saw a counselor for depression, and had started seeing a psychiatrist, Dr. Carter, the prior summer. He had anxiety attacks when he was around people. He sometimes had visual hallucinations. (Tr. 91-960). Plaintiff said he had a "very hard time trying to concentrate." He got confused easily. (Tr.101).

### 3. Consultative Physical Exams

Dr. Adrian Feinerman examined plaintiff at the request of the agency in July and November 2016. His reports are at Tr. 564-574 and 609-627. The second

exam included an x-ray of the left knee and bloodwork to check on some medication levels. The reports described the exam and Dr. Feinerman's findings, but do not contain a physical RFC assessment.

    4.    **State Agency Consultants' Physical RFC Assessments**

In August 2016, acting as a state agency consultant, Dr. Pardo assessed plaintiff's physical RFC based on a review of the file contents. He concluded that plaintiff was capable of light work with limitations. As is relevant here, he found that plaintiff could stand/walk for six out of eight hours a day and was limited to only occasional kneeling and occasional use of foot controls. (Tr, 161-163).

In November 2016, Dr. Kenney assessed plaintiff's physical RFC based on a review of the file contents. He essentially agreed with Dr. Pardo, except that he thought that plaintiff could stand/walk for only two out of eight hours a day. (Tr. 198-201).

    5.    **State Agency Consultant's Mental RFC Assessment**

In August 2016, acting as a state agency consultant, Howard Tin, PSYD, assessed plaintiff's mental RFC based on a review of the file contents. He used electronic versions of the agency forms that are commonly used for this purpose, the Psychiatric Review Technique Form and the Mental RFC Assessment Form. (Tr. 158-159, 163-165). On the PRT Form, he indicated that plaintiff had moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the Mental RFC Form, he answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" Under that section of the form, he rated plaintiff as

"moderately limited" in ability to carry out detailed instructions; "ability to maintain attention and concentration for extended periods;" and ability to work in coordination with or in proximity to others without being distracted by them.

Dr. Tin answered "yes" to the question "Does the individual have social interaction limitations?" He found that plaintiff was moderately limited in ability to interact appropriately with the general public.

In the adaption limitations section, he rated plaintiff as "moderately limited" in ability to set realistic goals or make plans independently of others.

In the subsections for explanation under the above sections, Dr. Tin wrote "See below."

In the last section of the form, entitled "MRFC-Additional Explanation," Dr. Tin wrote, in part, "Claimant has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person is capable of performing simple tasks."

A few months later, second state agency consultant affirmed Dr. Tin's opinion. (Tr. 194-195, 201-203).

### Analysis

Plaintiff's first two points merit little discussion.

His first point concerns Dr. Feinerman's reports. The ALJ gave Dr. Feinerman's opinions "little weight" because his reports did not give "a function-by-function assessment of the claimant's abilities." (Tr. 23). Relying on 20 C. F. R. § 404.1519p(b), plaintiff argues that the ALJ was required to seek the additional information from Dr. Feinerman before discounting his reports. That

8

section provides, "If the report is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."

Plaintiff's argument fails because he ignores the context of § 404.1519p(b). The required contents of a consultative examiner's report are:

(1) Your major or chief complaint(s);

(2) A detailed description, within the area of specialty of the examination, of the history of your major complaint(s);

(3) A description, and disposition, of pertinent "positive" and "negative" detailed findings based on the history, examination and laboratory tests related to the major complaint(s), and any other abnormalities or lack thereof reported or found during examination or laboratory testing;

(4) The results of laboratory and other tests (e.g., X-rays) performed according to the requirements stated in the Listing of Impairments (see appendix 1 of this subpart P);

(5) The diagnosis and prognosis for your impairment(s);

(6) A medical opinion. Although we will ordinarily request a medical opinion as part of the consultative examination process, the absence of a medical opinion in a consultative examination report will not make the report incomplete. See § 404.1513(a)(3); and

(7) In addition, the medical source will consider, and provide some explanation or comment on, your major complaint(s) and any other abnormalities found during the history and examination or reported from the laboratory tests. The history, examination, evaluation of laboratory test results, and the conclusions will represent the information provided by the medical source who signs the report.

20 C. F. R. § 404.1519n(c).

Dr. Feinerman's reports contain the information required by § 404.1519n(c). The agency does not require a consultative examination report to contain a

function-by-function assessment, i.e., an RFC assessment. Therefore, Dr. Feinerman's reports are not "inadequate or incomplete" within the meaning of § 404.1519p(b) and that section simply does not apply here.

Although the mandate of § 404.1519p(b) does not apply, the Court agrees that it is a bit odd for the ALJ to discount reports because they lack information that they are not required to contain in the first place. However, there is no basis to declare this move a legal error. Even if it was an error, it was harmless. Given Dr. Feinerman's largely normal findings on exam, there is virtually no chance he would give an RFC assessment that was more restrictive than the ALJ's.

Plaintiff's second point is based on a perceived contradiction in weighing the assessments done by the state agency consultants. The ALJ gave little weight to Dr. Pardo's assessment because it was inconsistent with the evidence of plaintiff's knee problems. He gave significant weight to Dr. Kenney's assessment because it was consistent with the evidence. Plaintiff perceives a contradiction here because both doctors limited him to occasional kneeling. Plaintiff fails to understand that Dr. Kenney found that plaintiff had an additional limitation related to his knees in that he was limited to standing/walking for a total of only two hours per day, and the ALJ accepted that additional limitation as well. Thus, he gave more weight to Dr. Kenney's opinion.

For his third point, plaintiff argues that the RFC assessment was erroneous because it failed to account for his moderate limitation in maintaining concentration, persistence, or pace.

The ALJ's RFC assessment and the hypothetical question posed to the VE

must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. The Seventh Circuit has been very clear that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate limitations in two of the four so-called paragraph B criteria, interacting with others and maintaining concentration, persistence or pace. He made this determination at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. He noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (Tr. 20).

The ALJ gave "significant weight" to Dr. Tin's opinion, along with the second consultant who affirmed that opinion, Dr. Hudspeth. He explained that Dr. Tin

11

and Dr. Hudspeth are "familiar with the evidentiary requirements of the disability program at issue, and their opinions are most consistent with the overall record." (Tr. 26).

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *Winsted v. Berryhill*, 915 F.3d 466, 471 (7th Cir. 2019), *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).

Here, the ALJ limited plaintiff to "the basic mental demands of unskilled work," meaning "understanding, remembering, and carrying out simple instructions." That is not sufficient to account for a moderate limitation in maintaining concentration, persistence or pace. "More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir.

2019). The Seventh Circuit put it succinctly in a very recent case:

> As we have labored mightily to explain, however, the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace. . . . Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

*Martin v. Saul,* No. 19-1957, ___ F.3d ___, 2020 WL 595998, at *3 (7th Cir. Feb. 7, 2020).

In *Burmester v. Berryhill*, 920 F.3d 507 (7th Cir. 2019), on the other hand, the Seventh Circuit found no error in an RFC assessment that limited the plaintiff to "simple, routine, repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public." *Burmester*, 920 F.3d at 509. The reviewing doctor "stated in the 'Statement of Work Capacity' portion of his assessment that Burmester had the 'ability to understand, remember and carry out simple instructions subject to physical limitations,' that 'maintaining concentration and attention should be manageable' and that she 'should be able to withstand routine work stress and adapt to typical job site changes.'" There was no checkbox indicating a moderate limitation in ability to maintain concentration, persistence, or pace. The Seventh Circuit distinguished the case from *DeCamp* on that basis. *Burmester*, 920 F.3d at 511-512.

Here, the Commissioner devotes much of his argument to reviewing the medical evidence to show that the evidence demonstrates that plaintiff has few if any mental limitations. That argument ignores the reality of the ALJ's decision.

13

The ALJ found that plaintiff has moderate limitations in interacting with others, and in maintaining concentration, persistence or pace, and he afforded significant weight to Dr. Tin's opinion to the same effect. That the Commissioner's after-the-fact review of the evidence leads him to a different conclusion is irrelevant. *Hughes v. Astrue*, 705 F.3d 276, 279(7th Cir. 2013) ("Characteristically, and sanctionably, the government's brief violates the *Chenery* doctrine….."); *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010) (It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision….").

The Commissioner also relies on *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). There, the Seventh Circuit rejected plaintiff's argument that it was error to omit a reference to a moderate limitation in concentration, persistence, or pace from the RFC assessment and hypothetical question where "according to the medical evidence, his impairments surface only when he is with other people or in a crowd." *Jozefyk*, 923 F.3d at 498. That case is distinguishable from the case at hand on that basis. The Seventh Circuit explained its holding in *Jozefyk* in a later case:

> In closing, we owe a word to the Commissioner's reliance on our recent decision in *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). We do not read *Jozefyk* to save the shortfalls in the ALJ's analysis here. In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support any such limitations. 923 F.3d at 498. As the Commissioner concedes, the facts here are different. The medical evidence plainly shows, and the ALJ recognized, that Crump suffers from CPP limitations. And, unlike in *Jozefyk*, Crump testified consistently with the medical treatment notes about how her bipolar disorder impairs her ability

14

to concentrate well enough to work for a sustained period. *Crump*, 932 F.3d at 571. Here, of course, plaintiff testified that he had difficulty concentrating and was easily confused.

The Commissioner suggests that *Jozefyk* "clearly hold[s] that a claimant bears the burden of specifying the mental limitations that were unreasonably omitted from the residual functional capacity finding . . . ." Doc. 26, p. 15. The Court disagrees that this is the holding of *Jozefyk*. In any event, plaintiff's counsel asked the VE about employers' tolerance for an employee being off-task, and the VE put it at a maximum of 10% of the workday. (Tr. 106-107). Being off-task is an obvious limitation arising from impaired concentration.

The Commissioner also cites *Dudley v. Berryhill*, 773 F. App'x 838 (7th Cir. 2019), but that case is nonprecedential. "Opinions, which may be signed or per curiam, are released in printed form, are published in the Federal Reporter, and constitute the law of the circuit. Orders, which are unsigned, are released in photocopied form, are not published in the Federal Reporter, and are not treated as precedents." Seventh Circuit Rule 32.1(b).

The Commissioner fails to address the central point here, which is that the ALJ found that plaintiff has moderate limitations in maintaining concentration, persistence, or pace, but failed to account for that limitation in the RFC assessment and the hypothetical question.

Lastly, the Commissioner points out that the "B" criteria have been amended and attempts to minimize the significance of the findings of moderate limitations by pointing out that "moderate" limitation means that a claimant's "functioning in this

area independently, appropriately, effectively, and on a sustained basis is fair." See, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164, 2016 WL 5341732 (Sept. 26, 2016) (effective Jan. 17, 2017). But a moderate limitation is not the same as "no" limitation. A "mild" limitation means that functioning is "slightly" limited and a "marked" limitation means that functioning is "seriously limited." Moderate is between mild and marked. 81 Fed. Reg. 66138, 66164. Therefore, a moderate limitation is more than a slight limitation, and the ALJ may not ignore the state agency consultants' designation of moderate limitations. Further, these definitions do not represent a change in the meaning of these terms:

> Third, we have used the words "mild," "moderate," "marked," and "extreme" under our prior rules for many years. Although we did not provide definitions for most of these terms until now, the definitions in final 12.00F are consistent with how our adjudicators have understood and used those words in our program since we first introduced the rating scale in 1985. As a result, the definitions we provide in these rules do not represent a departure from prior policy.

81 FR 66138, 66147.

The ALJ's conclusion regarding plaintiff's social limitations also refutes defendant's attempt to minimize the significance of the findings of moderate limitations. He found plaintiff to be moderately limited in interacting with others, leading him to limit plaintiff to no interaction with the public and job duties that involve working with things rather than with people. Dr. Tin likewise found that plaintiff was moderately limited in ability to interact with the public and therefore limited plaintiff to no such interaction. This demonstrates that both the state agency consultant and the ALJ understood that a moderate limitation is serious

enough to require accommodation.

The ALJ's error requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

This Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:** February 19, 2020.

													*Donald G. Wilkerson*

													**DONALD G. WILKERSON**
													**UNITED STATES MAGISTRATE JUDGE**